May it please the Court, Attorney David Dennis representing Ms. Ding, Ms. Amber Ding. The main issues that I wish to address today were the withdrawal of plea of Ms. Ding and the sentencing of Ms. Ding. I'm going to start with the withdrawal. This case, Ms. Ding was represented by prior counsel. The Blakely case had been decided. How to apply it and use it was still in disarray and subject to interpretation and opinions of different attorneys. Ms. Ding had always maintained her innocence, always wanted to go to trial. There had been many occasions where a plea was trying to be forced from Ms. Ding. Ms. Ding often refused. Her desire to go to trial didn't seem to interrupt with her travels to Singapore and Hong Kong. After the fact, Your Honor? Yeah. Well, you know, there's a big dispute after that. She, you know, she was there. She was apprehended and she was extradited back. While she wanted to face trial and clear her name, she was going the wrong way. She was going west instead of east, right? Facing courts is often a very scary thing, but forced with the option of having to do it, she did want to do it. She did want to clear her name. She had an adequate defense and she had tried to maintain that. Her attorney at that time said, you know, trust me, the Blakely case came down. We'll limit your facts. You're going to get this great sentence and just do it. You know, I know you claim your innocence, but trust me right now, just do it. Trust me. Forces her into the plea hearing. There's several interruptions. You know, she wanted and the whole thing was she wanted to tell her version of the story, which is basically a trial. He just said, listen, just do what I say and it'll be okay. She did do that. She, you know, as I indicated in my papers, the record is clear. A lot of interruptions. She wanted to make her point. She countered the government's case or what the government alleged that they could prove. But, you know, the court did insist, are you going to take this plea? She inevitably had to say yes to follow the instructions of her attorney. After the plea was taken, she immediately, you know, contacted her attorney to explain it to her, to go through it in detail. He never returned a phone call. She hired new counsel and requested the withdrawal. At the withdrawal hearing, she took the stand and testified, listen, I didn't know what he was asking me to do. I didn't even know what my consequences were going to be, what were my maximum punishment or my penalties. I want to withdraw my plea. She asked the court she wanted to withdraw the plea. The district judge says, I don't believe you. I'm going to maintain your plea. How could he not believe if a defendant who has a right to a trial is saying, I didn't know. I wanted a trial. My lawyer, you know, pushed me into this and I want to withdraw. I haven't seen my pre-sentence report. I don't know what I'm exposed to. I want to go to trial. How could you not believe that? You have the argument that Ms. Ding received no benefit from her plea. Correct. I wasn't clear what the basis of that argument was. Can you clarify that? Sure. One, she did not receive, if Attorney Robinson, who was a previous attorney, was going to limit the facts as to the Blakely, when he gave the plea he was limiting facts, basically she was going to be sentenced to the base term of the six, and whatever she admitted to her was proven by a jury trial. She did not receive that benefit. That was, I guess, the intended benefit of her prior attorney was to receive the benefit of Blakely, of limiting her facts. And the judge made a ruling in that withdrawal hearing that I was there and her prior counsel was limiting facts, basically to take advantage of Blakely. How was he limiting facts? Only to prior convictions? No, to whatever. See, there was an issue of, I believe, what facts were needed to establish a factual basis. That was the argument of, I guess, the government. That was the facts. But in the actual transcript, she was defending what she believed the government could even prove. But the court informed her of the statutory maximum for the conviction, right? So she was aware of what she was exposed to. At that time. At part of the colloquy. At part of the colloquy, correct. But previous to that hearing, she did not know. So right on the spot, she was informed. And she felt that she had no opportunity to withdraw right there. Let's assume that she wanted to withdraw. Even at the end of the hearing, she said. She didn't have anything to withdraw. She hadn't pleaded guilty yet. She hadn't pled guilty. Well, she was informed of the maximum, right? Right. Before she pleaded guilty. Correct. So she didn't have anything to withdraw. She hadn't pled yet. She could simply have said, I'm not ready to plead. I want to end this. But when, but basically. I want to have it go on. I don't want it to go on, or I do. Well, she wanted to be cleared, right? She wanted. She knew what the maximum would be before she entered a plea, right? Correct. She didn't have to withdraw a plea. She hadn't entered a plea yet. Correct. Well, if you look at the actual transcript, which I don't have in front of me, but I recall she was saying, I understand the wording. That's what she indicated. Because she was told at that time, well, your maximum is going to be 20 years or 40 years. Obviously, that's not what she expected to get. Or she goes, well, I understand the wording, but I still don't understand, like, what am I going to get or what's my benefit? See, she didn't understand at the time the Blakely issue. And what occurred is after Booker, you know, there is a big, there's a big question mark right now as to how to apply Booker. And the reasonableness standard. My position is, if you're going to, as this Court did, or the lower court. We already have a number of cases. Correct. The fact that Booker came up, you know, is not a basis for withdrawing a plea, even though the law has changed. Right? Were there cases directly on that point? I haven't seen that. Which cases, Your Honor, are you referring to? I can't give you the name. No ex post facto basis.  Dupas. Dupas. The basis of her plea, though, was, or the withdrawal of her plea was saying that she was not fully made aware of the consequences of her plea. What benefit she was going to derive. And the fact that she wanted to go to trial, but her attorney was not ready to go to trial. He said, I'm not going to trial. She took the stand and said, her lawyer told her, I'm not going to trial. Why would she? Why? You asked us earlier, how could the judge not believe her? He saw her. He saw her demeanor. He saw how she answered questions. Why can't he disbelieve her? We do it every day as trial judges. Correct. How can he not disbelieve her? He saw her. That's how he can not disbelieve her. He saw her. And I asked this Court to just look at the transcripts. I asked the Court to look. But the transcript doesn't show us how she answered the questions. It doesn't show us whether she hesitated, whether she looked for clues to her counsel, whether she was furtive in her actions. It doesn't show us her body language. Correct. Judge Reel saw all of those. Correct. But I asked this Court to look at the actual transcript and the way she answered. I think that the court reporter did a pretty good job of capturing what was going on with Ms. Ding, the way she answered the questions, the hesitations, the request for clarifications, the huddling, all these things. Her constant request to mention her point or to get her side of the story, this was the first time she had ever been in any type of criminal proceeding or ever witnessed a plea hearing and did not know what she was getting herself into, did not know. Basically, she knew that she's there and she's there having to plead guilty to these things. And immediately afterwards, she wished to withdraw her plea. This was not something she wanted. She thought she was going to present somehow her version of things, her story, whether she thought it was a sentencing jury at the time because of the Blakely issue, but it did not happen that way. What I was hoping you could do. Kennedy. What do we make of Judge Reel's finding at the hearing where you were present on the motion to withdraw, where he says, well, I just don't credit the testimony of the defendant. I think she's lying. Yeah. I don't know how he, you know, when you make that point. If we have to accept that, that pretty much washes your case down the drain, doesn't it? Well, yeah. If you accept that finding, it's a very difficult. Well, how can we not accept it? How can a judge or how can someone indicate that, you know, I did not want to plead guilty. I wanted to go to trial. I was forced by my attorney. And Judge Reel is saying, you know what, I don't believe you. That is the state of mind. How could he not believe the state of mind of the. He can over that. Okay. He can disbelieve it by taking a good look at her and thinking she's a phony. It happens every day, counsel. Your Honor, if you look at the totality of the circumstances, there were plea for her. There were a change of plea hearings. And at those change of plea hearings, she did not want to plead guilty. There was one a few days earlier. And this Court or that lower court wanted to believe that. In those matter of few days, she changed her mind. If your attorney tells you I'm ready for trial, let's go, based on your defenses, what defendant is going to want to plead guilty? Why? Especially if she rejected plea offers, wanted to go to trial. If her attorney says, you know what, this case is independent, and we're going to lose, then, you know, that might be the case. And that, based on maybe that information, she pled guilty. But her attorney was trying to give her that benefit of Blakely, which did not apply or which she did not receive. What I'd like to do on this case. If we get back, if we get past that point, then we have to address the other errors you contend were made right, the errors of sentencing. Correct. And that's what I wanted to get to right now. As to the sentencing errors, my position is, if the Booker case on reasonableness, if the court was going to use the guidelines predominantly or as the main focus of its sentencing, then it should still apply the constitutional requirements to the guidelines. Basically, the proof, the facts, either by admission or proof beyond a reasonable doubt. And once you make those factors and there's – and you've reached that level of proof on the different enhancements, then you take that base, as we say, and then apply the 3553 factors and discuss whether it should be bumped up or bumped down. And you take a look at the specific facts of the case and then apply those facts to your – to the sentence. Mr. Ginsburg.  Ms. Stink made a number of objections to the pre-sentence report based on various factual errors that were claimed. What of those objections would actually have changed her sentence under the guidelines? It just depends on how we apply it, based on the 3553 factors or the guidelines. Under the guidelines.  Based on the guidelines, there may have not been much change. Oh, it was the amount of loss. That was a huge – a very huge contested issue. If the – we made constant objections about the number of victims, 500 victims, with 5,000 claim of loss, and then there was an investor visa. There were two subcategories. There's an L-1 visa, and I don't know if this Court's familiar, and then there's an investor visa. The L visa is basically of a parent company. It transfers its employees to the United States to their subsidiary, and they're able to work here and eventually possibly get permanent residence. She helped many people do this. The government claimed that all her applications were false. We have this computer-generated report. These are all the applications she did. Clearly, since she did some fraud, then all of these cases are fraud, and she's attributed a loss of $2.5 million, which we contested. We even subpoenaed or requested that the government give us the victims. We – the burden is not on the – on the defendant to prove the enhancements. It's on the – on the government. But we took it upon ourselves to try to get the identity of some of these victims, bring them into court, and determine whether or not they were truly victims. I'm jumping to two things. That was – there was an L-1, and then there's an investor visa. There were seven individuals that put money together to open up a – an investment, a company, which was the 3W Company. And from that, basically, Ms. Steen hired attorneys to do the paperwork. She had consultants from other successful of these regional centers, these companies that the immigration already recognizes. These were even factors in litigation that were – that we tried to bring up. But, you see, as the court used them, did not – did not use – did not consider any of these things to lower her sentence or anything like that. Let me see if I made my point. I apologize. You have the L-1 and the investor. Then we tried to bring in those investors. The government claims that they did not know what they were investing in. Then we said, let's bring the investors in. We claimed they did know. That would be something offered to reduce the amount of loss. It was blocked by the government. It was further blocked by the court in denying our ex parte request to either compel them or to release the names and addresses so that we could locate them and subpoena them to court. That was denied. So if the court had properly ruled on the objections or made findings that, okay, we reviewed the government's documents, specifically this, that, this, and that, and we found it to be persuasive, or, as it should have done, allowed us to bring the victims – actually, it wasn't even our burden, but they should have allowed the victims to come in and question the victims. Did you know? Did you not know? Were you defrauded? Were this, were that? What were the – none of that was done. He just basically – and based on the record, you can't even see what were the factors that he used or why. He basically summarily said, I considered 3553 and I censored 108 months. Do you want to keep some time? Yes, I do.  May it please the Court. Eileen Decker on behalf of the United States. First, with respect to the withdrawal of the guilty plea, the district court did not abuse its discretion in denying defendant's motion. Defendant did not provide any fair or just reason for the withdrawal, particularly since the district court made the very explicit finding that the defendant had lied when she had taken the stand during the hearing in that matter. He wrote in his own handwriting, defendant was not a credible witness during the withdrawal of guilty plea hearing. That's right, Your Honor. That's very unusual. That's very unusual. And the second she left the witness stand, the court said, this defendant has lied. To say she did not meet her burden of a fair and just standard is an understatement. The court did not believe the defendant, did not believe her statements about deficient --"supposedly deficient performance by Mr. Robinson," did not believe any of her claims. And to respond briefly to some of the arguments made here today about her counsel not being ready, those facts were also disputed, and the district court made explicit written findings on that. Mr. Robinson and I met extensively prior to trial. We went over all the trial exhibits. We had stipulations on trial exhibits. His strategy, as he said, was he wanted a smooth trial, and he wanted to know in all the voluminous documents we had produced which ones the government was going to use as exhibits. I, of course, wanted to know whether I needed to call a numerous number of custodians. It was in our mutual interest. We sat down. We met about this. Mr. Robinson had all of the government's trial exhibits prior to trial. He was prepared. He had a private investigator who helped him throughout the discovery period, as this record indicates. And frankly, it's just contrary to everything in the evidence to say that his counsel --"excuse me, Ms. Ding's counsel was not ready for trial. Turning briefly to some of the other issues, with respect to the plea hearing, counsel requests the court to look at the transcript. The government requests that as well. This was not a 10-minute change of plea hearing. This hearing lasted almost two hours. And every time Ms. Ding equivocated, and just looking at the transcript, you can see that the court said, well, I'm not going to accept a plea if you don't know, and he went over it again. This was a very detailed hearing that the district court went through, and by the time of the hearing to withdraw the guilty plea, the court had the benefit of that hearing and all the answers she gave under oath to the court at that time, in contrast to the request to withdraw the guilty plea. And based on all of that, the judge was in a very unique position to say, to judge this particular person's credibility. I'm happy to cover more on that topic if the Court has any questions, but if there are no questions, I'd move on to the sentencing hearing. Again, with respect to the sentencing hearing and the sentencing briefings, it was briefed, all the issues in this case were briefed extensively. Hundreds of pages were provided to the court in exhibits and in documentary support. The defense objected to nearly every single paragraph in the pre-sentence report. The government in response provided the court with a summary chart, which is in the government's excerpt of record at 111 to 122, outlining every objection, the government's position, and then the exhibit and documents that support both the PSR and the government's position. Can the district court resolve the defendant's objections just by relying on the government's submissions? Is there any case supporting that? I think it would depend on the facts of the case, Your Honor. I am — I do recognize that there are several Ninth Circuit cases where the Ninth Circuit has said you just can't summarily say the role enhancement applies. And the court in its decisions has said in reviewing, this court needs to know what factors the district court relied on, not just the conclusion, but the facts that the court relied on. And in this case, because the district court did rely on the government's pleadings and that summary chart, this court in reviewing the district court's decisions knows what the district court was relying on. This was a very voluminous case, and I don't think in this particular case a district court should be in a position of reciting defendants objected to paragraph 1. I have reviewed the following exhibits, and I find the hearing would take an enormous amount of time. I think in such circumstances, the district court can be in a position to summarily, as long as it's clear, provide a summary position in what the court is relying on, and as long as this court is in a position to review, then the findings should be sufficient. And in this case, Judge Reel did specifically say he had reviewed all the sentencing papers, the pre-sentence report, the exhibits, and was aware of it and was adopting both the pre-sentence report and the government's exhibits in support of all of the response to the objections. Kennedy. Was there a proper motion to bring in victims to testify on behalf of the defendant? No, Your Honor. The request was for the addresses of the victims. The defense did not make a request that the address that the victims appear or which victims. By the way, with respect to the addresses, the defense made a request for addresses. It is significant that the government's records, which come from what was then the INS at the time of this case, the defendant used her own business addresses for most of the victims. For almost all of the filings, it was her own addresses that were used, and she had her own business addresses. Were the addresses of the victims provided to the defense? No, Your Honor. We did not provide the addresses. And we told counsel we would not provide the addresses. We also told him that the witnesses would be provided if a request was made at the hearing. But the ex parte application provided to the court was for their personal addresses. And we did not have for all of the petitions all of the victims of this case, and that's provided in the government's excerpt of record beginning at page 369. And this exhibit shows all of the addresses that were used and that they trace back to the defendant. The government did locate a number of witnesses who were going to be trial witnesses, and we did know how to reach those individuals. But no request was made of us to bring those people to the court for the sentencing hearing. And to my knowledge, no request was made to the court. Now, Ms. Decker, if we get past all these guideline calculations and get to the sentencing itself, Judge Reel didn't say too much about, you know, what factors under 3553 he considered, what he was relying on. He just, you know, simply imposed a sentence, right? How can we review that for reasonableness? Well, I think several factors, Judge Toshima. First, the district court did recognize 3553a factors, but also in looking at the pleadings submitted by the parties, by far the parties spent almost all of their time reflecting and arguing on the guidelines and how the guidelines applied. Very little was actually provided to the court with respect to 3553a factors. However, the court did say that it considered the factors, and there are some factors that were provided in the pre-sentence report, but not very many. And in light of the amount of facts provided to the court, the court's acknowledgment that it did consider it. And by the way, the court also in writing in response to the defendant's Rule 35 motion did articulate in a little more detail all of the 3553a factors that were considered. So given the facts of this particular case, I think the district court's acknowledgment of 3553a is sufficient. Should we withhold submission of this case until we have the en banc opinion in Zavala and Carty? It's certainly the discretion of this Court. However, I would suggest to the Court that the totality of this case indicates that the 108-month sentence is reasonable, and this Court need not wait. And that is, given the detailed nature of this immigration scheme, how long it took to uncover the fraud, that it did last for years, that millions of people were defrauded, that there were hundreds of victims involved, years to investigate, as the evidence in this case reflects. And it took a lot of time to piece together the evidence to prove that a fraud had been committed against the United States. And that the defendant, when learning about the charges, fled the United States on the heels of her brother and her sister-in-law, who left days before she left. That she obtained a new identity while in Taiwan and then only traveled using that new identity. It, frankly, is remarkable that she was found at all, because she was traveling with that new identity. The totality of this case indicates that the 108-month sentence was reasonable, and this Court need not wait. And, Your Honor, if I may go back to a prior question that you asked on the witness to be the victims of the case, I recall just one additional point on that. The victims were not simply the immigrants. The government made the argument to the district court that even if the immigrants were part of the scheme, it was the United States government that was victimized by this fraud. False documents were presented to the United States to the Immigration Service. They did give benefits, immigration benefits, in reliance on those false documents and materials that were provided. So, in fact, whether or not the victim immigrants were in court at the sentencing hearing was really insignificant, because it's charged in the indictment that the United States government was also victimized by this fraud. And unless there are any additional questions. Thank you, Your Honor. One very important point is I actually did in the clerk's record, Entry 157, even to disclose addresses of participants of the Investor Visa Program, the second part of that request was or to compel them to come to court. So I did make that request. And that was rejected in writing first by the government, and then when I requested from the court, it was also denied from the court. I would like to address a couple points briefly. The court asked me if there was any benefit for her plea. She did not receive any downward departure for acceptance or responsibility. There was no plea agreement in this case. There was simply an open plea, which the court should have viewed with some caution. You know, why was this individual just accepting, object, I mean, pleading guilty to all, if not most, of the counts? What benefit was she going to get when she could just go to trial the next day and try her case? And perhaps a few counts would be dismissed. She limited the counts and the facts, right? I think she pled to everything, but the government indicated that she had helped her brother and sister or sister-in-law to become, to file family-based petitions, which is something she does not cover. They had their own attorneys. They had their own separate, she had nothing to do with it. And she refused, there was no connection whatsoever. So she refused to plead guilty to that. She contested most of the facts of the underlying cases as well, but based on her attorney's persuasion, she did plead guilty, tried to limit the facts. But she did die-hardly want a trial. She requested that with new counsel. She had a hearing. She took the stand. You know, the judge made that ruling. I filed a request for judicial notice, which was rejected, which was basically a different case where, and I'll just cite a brief article, I tried to get the transcripts, but at not any time. It was the United States v. Allison, Ann Hirsch case, where the, where a similar situation. She pled guilty. There was a plea hearing. Actually was sentenced. And then in the media, she indicated that, you know, she was pressured by her attorney. She maintained her innocence. The government filed a motion, brought him into court and said, we've heard that you are maintaining your innocence. And Judge Real said, and I quote, I do not accept pleas from people who claim they are not guilty and blame it on their attorneys. I want to know whether you wish to withdraw your plea and, and, and asked her that. And at that time she said no. You know, if Ms. Ding was given that opportunity, you indicated you were pressured by your attorney, this and that. Do you want to withdraw your plea? Ms. Ding would have said yes. I want to withdraw my plea. I want to proceed to trial. The, the, the prejudice to the government as they indicated they were ready for trial was minimal. There were other counts that were unresolved that they could have proceeded to trial. That is simply what she's asking today, was give her the opportunity constitutionally to try her case and, and possibly clear her name. Thank you. Thank you very much. All right. That concludes our calendar. The Court stands adjourned until tomorrow morning at 9 o'clock.
judges: Tashima, Bea, Ikuta